UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br> v.<br><br>SIDNEY GREENE (D-1),<br><br>         Defendant. | 3:09-CR-00053-TMB-DMS-01<br><br>**INITIAL REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO SUPPRESS SEIZURE OF TELEPHONE CALL MARCH 26, 2009 AND SEIZURE OF BAG OF TAX DOCUMENTS**<br>**[Doc. 313]** |

## I. MOTION PRESENTED

Defendant Sidney Greene is charged in this multi-defendant case with a variety of crimes. Of the forty-one counts in the Second Superceding Indictment, found at Docket 83, all but three apply to him. Most of the charges against Defendant Greene involve allegations of sex trafficking of children and adults and promotion of prostitution. Greene is also charged with child pornography offenses, conspiracy to commit tax fraud, and identity theft.

In this motion at Docket 313, Greene requests that the Court suppress the seizure of a telephone call made to Greene's residence on March 26, 2009 when law enforcement officers were searching the residence pursuant to Search Warrant 3:09-MJ-00048-DMS (hereafter referred to as the Search Warrant). While there were no substantive statements made during the call, Greene asserts that the identity of the person who called Greene, Sabil Mujahid, should be suppressed because it was outside the scope of the warrant for the law enforcement officer to answer the phone. Greene also asks that the Court suppress the tax documents found inside a black duffle bag that was seized pursuant to the search warrant on March 26, 2009. He argues that the tax documents were outside the scope of the warrant.

1

The Government opposes the motion. It argues that the agents' interception of the phone call on March 26, 2009 was proper because the call occurred during the execution of the search warrant and the call was reasonably related to the purpose of the search, citing to *United States v. Ordonez*, 722 F.2d 530, 541-42 (9th Cir. 1983). It also argues that the seizure of the black duffle bag and the tax document inside was proper because those documents constituted information about financial transactions related to the suspected prostitution business and identification of people involved in the suspected prostitution business.

After Greene filed this motion, he obtained new counsel. His new counsel filed a motion requesting permission to expand the motion to include a request to suppress tax documents in a green bag found and seized at his residence on March 26, 2009. The Court granted the motion. Greene's new counsel also filed supplemental briefing at Docket 603.

An evidentiary hearing was held on March 25, 2011. The transcript of that proceeding is located at Docket 617.

## II. SEARCH WARRANT– ITEMS TO BE SEIZED

The Search Warrant authorized the agents to search for and seize a list of items set forth in Attachment B. It authorized law enforcement to search for evidence of a violation of:

> Title 18 United States Code 1952 Interstate and foreign travel or transportation in aid of racketeering enterprises [and Title 18 United States Code Conspiracy]:
> a) Any and all items related to commercial sex acts (prostitution) including, but not limited to: condoms, sex toys, sexual lubricants, sexually suggestive clothing, sexually suggestive pictures, bedding, PDA's, pagers, credit cards, cameras, videos, identification documents, guns, currency, client or customer lists, email addresses, escort licenses, lists of rules, ledgers, journals, notebooks, items indicating payment for commercial sex acts, medical records related to prostitution activities, medication and medical supplies relating to prostitution activities, including but not limited to contraceptives, anti-inflammatory medications, and antibiotics.

2

    b)     Any and all evidence of financial transactions related to prostitution operations, including but not limited to: monies, checks, checkbook registers, books, ledgers, bank account records, bank transaction receipts, wire transfer records, currency, financial transfers, purchases, invoices, receipts, airline tickets, records of expenditures, correspondence, files, and safe deposit box records. All credit cards, credit card statements, or handwritten notes that appear to depict credit card numbers or transactions.

    c)     All cellular telephones believed to belong to [Mujahid or Greene], . . .

    d)     All photographs and video related to the prostitution businesses including pictures of Mujahid and/or Greene with other women or girls previously identified as associated with the escort businesses, or pictures of said females or pictures of either of the above depicting individuals in a sexual manner.

    e)     All non-commercially produced video tapes and all video recoding equipment.

    f)     All digital cameras and SD cards or other electronic storage media used to save digital photo images.

    g)     Any documents relating to Recruiter #2 and Recruiter #1 to include, but not limited to, names, addresses, telephone numbers, correspondence, and photographs.

    h)     Any documents or items tending to show occupancy, ownership, possession or control, including but not limited to utility receipts, mortgage or rent receipts, lease, rental or sale agreements or contracts, credit cards or credit card receipts, letters, other correspondence, and bills related to [property to be search]. . . .

    i)     Any and all evidence of prostitutes, recruiters, employees or other person associated with the prostitution business described in this warrant, to include but not limited to Seductions Escort Service and internet postings. Such evidence is to include but is not limited to: all identification cards (both valid and false identification cards/documents), luggage tags, suitcases, paperwork, diaries, journals, photographs, correspondence, and other belongings.

    j)     All computer hardware capable of collecting analyzing, creating, displaying, converting, storing, concealing, or transmitting any of the items referred to in paragraphs a, b, c, d, e, f, g, h, and j or information in electronic, magnetic or optical formats. . . .

(Doc. 329-1).

    The affidavit by Special Agent Jolene A. Goeden supported the search warrant. The affidavit contained a recitation of facts regarding a Federal Bureau of Investigation (FBI) and

Anchorage Police Department (APD) investigation of Defendants Sidney Greene and Sabil Mujahid on suspicion of prostitution, sex trafficking, and related racketeering enterprises. The affidavit described Greene's business activities, Sabil Mujahid's business activities, property and vehicles associated with the suspects, alleged victim accounts of the suspects' activities, and information that connected Greene and Mujahid's prostitution businesses. The affidavit then described what items could be located in Greene's residence that would constitute evidence of the suspected crime of prostitution, sex trafficking, and related racketeering enterprises. (Doc. 329-1 at 15).

### III. DISCUSSION

#### A. Interception of Phone Call

Detective Randy Adair with the APD was part of the law enforcement team executing the Search Warrant on March 26, 2009. During the search, he was positioned in the kitchen searching for items authorized by the warrant. (Tr. at 9). As part of his search, he was reviewing a telephone that was in the kitchen, making notes about the phone numbers listed on that phone. (Tr. at 11). During his search, the telephone in the kitchen rang. Detective Adair noticed that the caller identification on the phone displayed "Evercom System" as the incoming caller. (Tr. at 11). Detective Adair testified that he was familiar with Evercom System because it is the system that inmates at the Anchorage Correctional Complex use to call people. (Tr. at 11-12). Also, the Evercom System number was one of the numbers he noticed when reviewing the phone calls on Greene's kitchen telephone. (Tr. at 12). He answered the phone. Upon answering he heard a recorded voice asking whether he would like to accept a call from Sabil Mujahid, Greene's co-defendant in this case. The name specified on the recording was actually recorded by Mujahid

4

himself, and Detective Adair recognized it from listening to Mujahid's jail recordings as part of his investigation of the case. (Tr. at 12). Detective Adair hung up the phone after hearing who was calling. (Tr. at 12).

Greene argues that Dectective Adair was not authorized to answer the phone during the execution of the search warrant. Indeed, the Search Warrant does not explicitly allow the officers to answer any incoming phone calls. Explicit authority to answer phone calls is not necessarily required, however, as long as the calls are reasonably related to the purpose of the search. In *United States v. Gallo*, 659 F.2d 110 (9th Cir. 1981), the Ninth Circuit held that it was proper when the searching agents answered telephone calls while executing a search warrant related to a suspected illegal gambling business. In that case, the warrant did not specifically authorize the agents to intercept incoming phone calls, but the Ninth Circuit concluded that the interceptions were nonetheless valid because the telephone was a highly necessary accessory to the suspected illegal business and thus any incoming phone call would have been reasonably related to the purposes of the search and would have constituted evidence of such a crime. *Id.* at 114. In *United States v. Ordonez*, 722 F.2d 530 (9th Cir. 1983), *amended on other grounds by* 737 F.2d 793 (9th Cir. 1984), the Ninth Circuit again held that the officers' interception of incoming phone calls during the execution of a search warrant, while not specifically authorized by the search warrant, was nonetheless reasonable and within the scope of a warrant when the warrant made clear that the telephone was highly necessary to an unlawful drug organization operating out of a private residence. *Id.* at 541-42. Based on these two cases, agents can intercept telephone calls when legitimately searching pursuant to a warrant if the calls are within the apparent scope of the warrant.

5

In this case, phone calls are discussed and contemplated as part of the business in the search warrant application. The affidavit supporting the search warrant details phone numbers that were used as part of the suspected prostitution business. It describes various internet advertisements and how Greene's phone numbers were the listed numbers on those advertisements. The Search Warrant also describes the various recorded phone conversations that took place between Greene and Mujahid while Mujahid was in jail where the two men allegedly discuss prostitutes and the prostitution business. Based on this information in the warrant, incoming phone calls are reasonably within the scope of the warrant. The items authorized for seizure on Attachment B were not exclusive lists, as the various paragraphs in Attachement B include the language "including but not limited to" before detailing the specific items authorized for seizure. The agents were authorized to seize evidence related to the suspected prostitution business and based on the affidavit, phone calls were a necessary part of running such a business. Phone calls were also being used by the men, according to the affidavit, to continue to manage the business while Mujahid was in jail. Thus, this Court finds that Detective Adair was not outside the scope of the warrant when he intercepted the phone call from Evercom on March 26, 2009 and heard that Mujahid was calling Greene's phone.

**B.  Seizure of Tax Documents**

Based on the testimony and exhibits presented during the evidentiary hearing, officers found two closed containers in Greene's residence that contained tax documents. One was a black duffle bag seized from a closet in the kitchen. (Tr. at 55; Gov. Ex. 3)). The other was

a green portfolio found in the attic crawl space in the kitchen.[1] (Tr. at 14, 58; Gov. Ex. 2). Greene argues that the agents should not have seized tax documents that were located inside these containers because tax documents were not evidence within the scope of the warrant.

### 1. File folder found in attic crawlspace

Greene argues that any tax documents in the green portfolio should not have been seized because they were not listed items in the Search Warrant. On the inside flap of the portfolio were two slots about the size of identification cards. One slot contained a social security card and the other slot contained an identification card. (Gov. Ex. 2). The identification card belonged to someone the agents knew and believed to be involved in the prostitution business. (Tr. at 59). Inside the portfolio were a stack of documents. Those documents were admitted into evidence as Government Exhibit 5.

This Court has closely reviewed Attachment B of the Search Warrant, which set forth a list of items that the agents could seize. Paragraph i) of Attachment B allowed the agents to search for evidence related to prostitutes, recruiters, employees, or other persons associated with the prostitution business described in the warrant. It listed some examples of what that evidence could entail. Those examples were identification cards and documents (both valid and false), luggage tags, suitcases, paperwork, diaries, journals, photographs, correspondence, and other belongings. But the warrant also made clear that this was a non-exhaustive list. Any evidence that could be used to identify prostitutes, recruiters, employees, and other people associated with the prostitution business was within the scope of the search warrant. Unlike the paragraph d),

---

[1] In his supplemental memorandum at Docket 603, Greene refers to this green container as a bag. Based on Government Exhibit 2, the container is more akin to a plastic portfolio or file folder.

which only allowed the agents to seize photographs of Greene or Mujahid with women or girls "previously identified as associated with the escort business," paragraph i) does not contain such a limitation.

Paragraph a) of Attachment B allowed the agents to seize all items related to commercial sex acts. The listed examples included identification documents, client lists, ledgers, notebooks, and medical records. Again, the specific examples were a non-exhaustive list. In addition, paragraph b) of Attachment B allowed the agents to seize any and all evidence of financial transactions related to prostitution operations. The list of examples in paragraph b) included bank account records, financial transfers, invoices, receipts, records of expenditures, correspondence, and files.

This Court has closely reviewed the tax documents in the portfolio to see if they fit within the three paragraphs of Attachment B. This Court concludes that the seizure of the portfolio as a whole was proper because it was a single file of papers that contained evidence reasonably within the scope of the warrant. As noted above, paragraph a) allowed the agents to search for and seize any identification documents and paragraph i) allowed the agents to search for and seize identification cards and paperwork. The identification card located on the inside flap would have been immediately apparent to the searching officers upon opening the portfolio. Also, paragraph b) allowed agents to seize files that were evidence of financial transactions including records of expenditures, correspondence and files related to the prostitution operations. Based on Government Exhibit 5, the portfolio contained one of Greene's tax returns. This Court finds it was reasonable for the agents to conclude that Greene's tax documents are financial documents related to the prostitution business, especially given the fact that he was one of the main suspects

being investigated for operating a sex trafficking business and given the fact that tax documents provide evidence about financial transactions, income, and expenditures. The agents knew there was evidence reasonably within the scope of the search warrant inside the portfolio; therefore, seizure of the whole portfolio was proper because it was a single file containing financial records and identification documents related to the business. The other documents did not need to be separated out before the file was seized. *See United States v. Beusch*, 596 F.2d 871, 876-77 (9th Cir. 1979) (noting that as long as a single file or ledger appears at the time of the search to contain some evidence reasonably related to the purposes and within the scope of the warrant, officers need not separate every paper within that file and holding that suppression was not required where agents seized a single file and two ledgers, each of which contained multiple pages of information some of which was covered by the warrant).

This Court also concludes that even looking at the tax documents inside the green portfolio individually, each was within the scope of the warrant.[2] Some of the documents found inside the portfolio simply have handwritten notations on them with names and identifying numbers such as a birth date or a social security number. Such documents were clearly within paragraph i) and a) of Attachment B to the Search Warrant because they were reasonably considered identification documents or possible client lists.

Some of the documents in the portfolio were official tax documents, such as tax returns and Internal Revenue Service letters, and checks from the United States Treasury. As stated

---

[2] Greene is only challenging the seizure of documents related to the tax offenses. The portfolio also contained some miscellaneous documents like some escort business documents, a lease, some child custody documents, Greene's birth certificate, a pay stub, and a handwritten telecommunications business plan but these documents are not specifically challenged in this motion.

9

above, this Court concludes that any of Greene's tax documents are reasonably within the scope of the warrant as the agents could have considered such documents evidence of financial transactions related to the suspected prostitution business. As for the tax documents not associated with Greene located in the portfolio, this Court finds that these documents are also reasonably within the scope of the warrant under paragraph i) because they are evidence of people associated with the prostitution business. The purpose of paragraph i) was to allow the agents to seize evidence that identifies who was involved as a prostitute, recruiter, or otherwise. Indeed, the language of paragraph i) did not contain the limitation that only identification evidence related to people previously identified as involved in the business could be seized. Therefore, as long as the evidence could reasonably have been considered evidence that identifies people who were involved, it was within the scope of the warrant. The fact that a suspected sex trafficker had multiple tax documents or treasury checks associated with a handful of different women in his possession made it reasonable for the agents to have considered such documents to be evidence of people involved in the business. Furthermore, checks are specifically articulated in paragraph b) of the warrant and therefore any of the United States Treasury checks would certainly have fallen within the scope of the warrant.

### 2. Black duffle bag

The Government noted in its oral argument at the close of the evidentiary hearing that Greene did not establish a privacy interest in the black duffle bag found in his residence. His co-defendant, in a separate but related motion at Docket 304 asserted and established that the black bag was exclusively his and only stored at Greene's residence for safekeeping. Fourth Amendment rights cannot be asserted vicariously. *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978).

10

In order to have a viable Fourth Amendment claim, the person asserting his or her rights must have a legitimate expectation of privacy. *Id.* at 143 (citing *Katz v. United States*, 389 U.S. 347, 353 (1967)). The defendant bears the burden of establishing his legitimate expectation of privacy. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980); *United States v. Zermeno*, 66 F.3d 1058, 1061 (9th Cir. 1995). To demonstrate a legitimate expectation of privacy, the person must show that he or she has a subjective expectation of privacy in the area searched that society is prepared to recognize as objectively reasonable. *Smith v. Maryland*, 442 U.S. 735, 740 (1979); *United States v. Ziegler*, 474 F.3d 1184, 1189 (9th Cir. 2007).

In this case, Greene did not establish that he, too, had a privacy interest in the black duffle bag, and thus he cannot challenge the seizure of the tax documents located inside the bag. However, even if Greene had a privacy interest in the black duffle bag, this Court has already concluded that the seizure of that bag and the documents inside it were within the scope of the warrant. (See Docket 703).

## V. CONCLUSION

Based on the foregoing, this Court respectfully recommends that Defendant Greene's Motion to Suppress Seizure of Telephone Call March 26, 2009 and Seizure of Bag of Tax Documents Motion be DENIED.

DATED this 7th day of September, 2011, at Anchorage, Alaska.

/s/ Deborah M. Smith
DEBORAH M. SMITH
United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **CLOSE OF BUSINESS, September 16, 2011.** Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-89 (9th Cir. 1980), cert. denied, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation. United States v. Howell, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **CLOSE OF BUSINESS, September 23, 2011.** The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a). **The shortened objection and response deadlines are necessary due to the looming trial date. D.AK.L.M.R. 6(a) authorizes the court to alter the standard objection deadlines.**

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).